IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN MARIANA ISLANDS

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

Huanqi WU,

    Defendant.

Case Number: **CR 19-00017**

**AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT**

I, Cristin Duenas, being duly sworn under oath, state the following:

**I.    INTRODUCTION**

1. I am currently employed by the Commonwealth of the Northern Mariana Islands (CNMI) Department of Finance, Division of Customs as a Customs Officer, and have been so employed for approximately four (4) years. Since July 2016, I have been assigned to Homeland Security Investigations (HSI) at the Saipan office as a Task Force Officer. Prior to completing the HSI Task Force Officer training in September 2017, I graduated from the CNMI Division of Customs academy in November 2015. As a Customs Officer and as a HSI Task Force Officer, I have received classroom and on-the-job training in the areas of general law enforcement, criminal investigative techniques, and criminal law, including arrest, search and seizure.

2. As a Task Force Officer, I am authorized to conduct investigations and to make arrests for offenses in Title 18 of the United States Code (U.S.C.) as well as offenses of Title 8, Title 19, Title 21, Title 31, and others. As an HSI Task Force Officer, I have participated in numerous criminal investigations including (but not limited to) violations of alien harboring and employment. I have received training and actual experience relating to federal criminal procedures, federal statues and HSI regulations. The information contained within this affidavit

is based on my training and experience, and information obtained from other law enforcement agents involved with this investigation.

3. I make this affidavit pursuant to Rules 3 and 4 of the Federal Rules of Criminal Procedure in support of the Criminal Complaint filed herewith, and for the issuance of an arrest warrant for the defendant named in the Criminal Complaint, for committing the violations of Title 18 U.S.C. §§ 1028(a)(1) and (f) (Conspiracy to Unlawfully Produce an Identification Document).

4. The elements of Title 18 U.S.C. §§ 1028(a)(1) and (f) are:

a). First, there was an agreement between two or more persons to knowingly and without lawful authority produce an identification document, authentication feature, or a false identification document which was in or affected interstate or foreign commerce;

b). Second, the defendant joined in the agreement, knowing of its purpose and intending to help accomplish that purpose.

5. The facts set forth herein are based on my direct involvement in this investigation, (including interviews I conducted), my conversations with other law enforcement officers having direct or hearsay knowledge of pertinent facts, my review of official documents and records generated and maintained by various governmental agencies and/or business entities, and information gained through my own training and experience. Since this affidavit is being submitted for a limited purpose, I have not included each and every fact I have learned during the course of investigation. Unless otherwise indicated, all actions, statements, and conversations that I have described in this affidavit are related in substance and in part.

6. Part of my normal duties as an HSI Task Force Officer includes responding to calls for assistance from other Federal and state law enforcement agencies regarding foreign

national subjects encountered by that agency. I and other HSI personnel often respond in person to duty calls from U.S. Customs and Border Protection (CBP) officers at the Saipan International Airport or calls from U.S. Federal Protective Service (FPS) officers. Enforcement actions that I or other HSI personnel may take as a result of responding to duty calls can range from a field interview of the subject to determine nationality/citizenship and immigration status, to criminal or administrative arrest of the subject. Once it has been established that a subject possesses valid U.S. immigration status and no criminal violations have occurred, the interview is terminated.

## II.   INFORMATION ABOUT THE CNMI-ONLY CONDITIONAL PAROLE PROGRAM

7. At all times relevant to the information in this affidavit, and specifically since November 28, 2009, Chinese nationals have been able to apply for permission to enter the CNMI under a parole program. Under the parole program, Chinese nationals may be paroled only into the CNMI for business or pleasure for a temporary period of time. To be granted parole, an arriving Chinese citizen must (a) be a national of the People's Republic of China; (b) be solely entering and staying in the CNMI for a period not to exceed forty-five days; (c) be in possession of a round-trip ticket that is non-refundable and non-transferable and bears a confirmed departure date not exceeding forty-five days from the date of entry into the CNMI; (d) be in possession of a completed and signed Guam-CNMI Visa Waiver Information form (CBP Form I-736); (e) be in possession of a completed I-94, Arrival-Departure Record (CBP Form I-94); and (f) be in possession of a valid unexpired ICAO-compliant, machine-readable passport. Chinese visitors who are paroled under the program may not engage in local employment or labor for hire, and may not overstay the length of their parole.

8. CBP Form I-736—which certain foreign-born, non-immigrant, non-visa holders visiting Guam or the CNMI must complete prior to entry—includes basic questions, such as

whether the foreign-born national had ever before applied for a U.S. immigrant/non-immigrant visa, or whether the foreign-born national had ever been arrested for any offense or crime.

9. Form I-736 also contains the following certification language by the foreign-born national: "I certify that I have read and understand all the questions and statements on this form. The answers I have furnished are true and correct to the best of my knowledge and belief."

10. The foreign-born national seeking admission to the United States under the conditional parole program or other visa-waiver class of admission must then present CBP Form I-736 and other required documents to the USCBP officer conducting primary inspection of the foreign-born national.

### III. SUMMARY OF INVESTIGATION

11. On December 6, 2019, Federal Protective Service (FPS) Inspector Sean White conducted a traffic stop and encountered Huanqi WU (hereinafter WU), who presented a CNMI driver's license. WU spoke a little English, therefore FPS requested assistance from HSI for interpreting services and identity verification. Utilizing DHS systems, HSI discovered that WU is a citizen of the People's Republic of China (PRC) who had overstayed his CNMI-Only conditional parole. WU presented a CNMI driver's license to FPS Inspector White, which had been obtained using a fraudulent immigration document.

### IV. STATEMENT OF PROBABLE CAUSE

12. On December 6, 2019, FPS Inspector White conducted a traffic stop on the vehicle being operated by WU at the Marina Heights Building II for a Code of Federal Regulation (CFR) violation. The driver of the vehicle, subsequently identified as WU, presented a CNMI driver's license to FPS Inspector White as his form of identification.

13. After encountering WU, FPS Inspector White requested assistance from HSI with

running system checks on the subject for any warrants. DHS systems identified WU as a citizen of the PRC and is illegally present in the United States. The CNMI driver's license was turned over to HSI Task Force Officer (TFO) Jesse Dubrall upon request to speak with WU once FPS Inspector White was done issuing his citation.

14. At the HSI office, WU was fingerprinted and photographed and through biometric comparison, WU's identity was confirmed. DHS records also further confirmed that WU is a PRC citizen who entered the CNMI on September 27, 2016 and was granted CNMI-only Conditional Parole by U.S. Customs and Border Protection until September 30, 2016. WU overstayed his authorized parole date and is therefore subject to being placed into immigration removal proceedings.

15. Since WU had no legal immigration status, HSI personnel contacted CNMI Bureau of Motor Vehicles (BMV) personnel regarding the CNMI driver's license possessed and presented by WU. BMV personnel provided TFO Dubrall (a DPS Detective assigned to the HSI Task Force) with WU's Driver's License and Operator's Permit Application Form dated July 30, 2018, copies of his PRC Driver's License, PRC Passport and U.S. immigration form I-797A, bearing the receipt number: WAC-17-144-52694, Class: CW1 listing WU as the beneficiary with a valid date from October 1, 2017 to September 30, 2018.

16. Upon receiving the information, Special Agent (SA) Nicole Sively conducted record checks on the information listed on the I-797A. According to DHS systems, the receipt number listed on the I-797A was valid but registered to another individual and not assigned to WU. Furthermore, records check conducted on WU's name and Date of Birth revealed no immigration petitions to include the CW-1 visa. Based on these results it was determined that the I-797A submitted with the July 30, 2018 Driver's License Application was fraudulent.

17. Utilizing a Mandarin interpreter, WU was advised of his rights and agreed to an interview about his CNMI driver's license he presented to FPS Inspector White. WU stated that he cannot read or write in English but could speak a little English. WU stated that he knew that he had overstayed his parole and that he is currently illegally present in the United States. WU stated that he needed a driver's license in order for him to work in the CNMI. WU said that he couldn't get a driver's license because of his immigration status and asked a known conspirator to help him get a driver's license.

18. At the BMV office, WU recalled that the known conspirator had some documents with him and may have turned in a few papers for him to get his CNMI driver's license. WU denied making the fraudulent I-797A immigration form that was used to obtain his CNMI driver's license. WU stated that the known conspirator was paid 2,100 RMB, i.e. approximately $300 USD, for the known conspirator's assistance to help with getting his driver's license. After submitting the driver's license application with the fraudulent I-797A immigration form, BMV issued WU a CNMI driver's license.

## V. CONCLUSION

19. Based on the foregoing, I submit that there is probable cause that WU knowingly and without lawful authority, produced a fraudulently obtained identification document to law enforcement personnel, all in violation of 18 U.S.C. §§ 1028(a)(1) and (f). I have shown this affidavit and the accompanying Criminal Complaint to Assistant United States Attorney Garth Backe, and he informed me that they are in proper form.

Respectfully submitted,

Cristin Duenas, Task Force Officer
Homeland Security Investigations

Case 1:19-cr-00017 Document 1-1 Filed 12/06/19 Page 7 of 7

Subscribed and sworn to before me on December 6th, 2019:

_____
U.S. MAGISTRATE COURT JUDGE

Page 7 of 7